*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 22, 2021

Plaintiff-Appellee,

v

No. 350536
Wayne Circuit Court
LC No. 19-002316-01-FC

CHRISTOPHER ANDREW CANALES,

Defendant-Appellant.

Before: TUKEL, P.J., and SAWYER and CAMERON, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of torture, MCL 750.85; unarmed robbery, MCL 750.530; unlawful imprisonment, MCL 750.349b; assault with intent to do great bodily harm (AWIGBH), MCL 750.84, felonious assault, MCL 750.82; and assault or assault and battery (assault and battery), MCL 750.81. Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 50 to 75 years' imprisonment for his torture conviction, 25 to 37 ½ years' imprisonment for each of his unarmed robbery, unlawful imprisonment, AWIGBH, and felonious assault convictions, and 93 days' jail for his assault and battery conviction. On appeal, defendant argues he was (1) denied due-process when the prosecutor failed to timely disclose photographs of the victim's injuries until trial, (2) prejudiced by the prosecutor's conduct and the trial court's failure to enforce the discovery order, (3) denied effective assistance of counsel by trial counsel's failure to ensure that defendant had the opportunity to review all of the discovery before deciding whether to accept a plea offer and failure to call a witness at trial, and (4) as a result, the trial court erred in its findings of fact, leading this Court to deny the motion to remand in error. In addition, defendant argues the trial court made a mistake of law during his sentencing, and the failure to recognize and raise the error by trial counsel and appellate counsel constituted ineffective assistance of counsel. We affirm, but conclude that trial counsel was ineffective at sentencing in failing to recognize errors in the presentence investigation report (PSIR), and we remand solely for resentencing and to correct the PSIR.

## I. FACTS AND PROCEDURAL BACKGROUND

This case arises from the physical assault incident of the victim. Around midnight, on the day of the incident, the victim was walking home from his friends' apartment building when he ran into defendant and codefendant, Clarence Campbell.[1] Defendant and Campbell asked the victim for the money he owed them, which the victim knew was the $20 the victim owed to "somebody else . . . over a phone." After insisting he had no money, the victim was dragged by his hooded sweatshirt by defendant and Campbell into an apartment building. The victim was dragged into apartment unit one, which he recognized as the place where he had purchased crack cocaine and heroin in the past. Inside the apartment, the victim saw between five and seven people, recognizing some of the people but only identifying the apartment's tenant, Dawn Gilson, and a man she lived with. In the living room of the apartment, defendant and Campbell punched the victim and searched him for money, pulling off his clothes. At one point, Campbell found the victim's debit card and called the victim's bank to determine the balance of the account. The victim testified that defendant and Campbell refused to let him call someone to obtain the money he owed them. Defendant obtained a stick and started hitting the victim with it until it broke into two pieces, then defendant and Campbell each started hitting the victim with the pieces of stick. The victim was then dragged into the bathroom and told to sit on the toilet while defendant and Campbell cut the victim's hair with scissors and electric clippers. While attempting to cover his face with his hands and close his eyes, the victim felt hair spray being sprayed in his face. The victim heard someone say "it's flammable[,] . . . [a]nd the next thing you know I hear a lighter go off and . . . a burning feeling on my face. I open up my eyes real[ly] quick and [my face is] just burning and it's on fire." The victim got in the bathtub and attempted to put out the fire using the shower curtain. After the fire was extinguished, defendant turned on the hot water to the shower. The victim attempted to lower the water temperature but defendant told him not to touch the faucet handle. Defendant eventually turned off the water, turned off the bathroom light, and left the victim in the bathroom alone. The victim heard a knock at the door to the apartment and defendant told the victim "to keep quiet or he was gonna kill me."

Outside the apartment, the responding Detroit Police Officers, Mitchell Griggs and Brent Miller, heard "a fuss on the inside [of the apartment] like people moving around, closing doors, that kind of thing." The door to the apartment was opened by a female occupant, the officers asked if anybody was injured inside the apartment. After the female responded, Officer Griggs heard someone yell "[h]elp really loudly." The officers entered the apartment, finding the victim in the bathroom, stating that he needed help and "they" would not let him leave.[2] After speaking to the victim, the officers arrested defendant and Campbell for suspected aggravated assault, felonious assault, and possible kidnapping. The victim was transported to the hospital and remained hospitalized for his burns for three days.

---

[1] Campbell pleaded guilty to one count of torture.

[2] While the officers were at the apartment, Officer Miller wore a body camera that captured the events as testified by Officer Griggs. The video footage from the body camera was played for the jury during trial with the exception of redacted sections containing the victim's personal information.

Before trial, defendant was offered a plea agreement, allowing defendant to have pleaded to the torture charge with a sentence of 12 to 20 years' imprisonment, with the dismissal of the remaining counts and fourth-offense habitual offender status. Defendant reviewed the victim's medical records and photographs of the victim's injuries that had been disclosed by the prosecutor, deciding to reject the plea offer. At trial, the victim testified that he did not have a weapon on his person, including a piece of brick, but that he had a lighter at some point during the incident; he did not argue with Gilson inside the apartment; and he was not under the influence of drugs at the time of the incident, but he had used drugs the morning of the incident. After defendant cross-examined the victim, the prosecutor sought to admit six photographs of the victim's injuries taken at the hospital on the day of the incident. Defendant's trial counsel objected to the admission, arguing "these photos have been in existence since the day they were taken on March 7th. There's a discovery order . . . requiring a prompt turnover, uh, a mutual discovery of all these items[,] [and] I'm just getting these yesterday." As a result, trial counsel argued it was "too late" and "prejudiced" defendant to admit the photographs now and without proper and timely disclosure. The trial court allowed the photographs to be admitted, stating:

> *Trial Counsel*: . . . We need to have these in a timely fashion because it goes into all of the things that develop with a, a defendant's rep—representation including the possibility of whether an appropriate plea is appropriate—
>
> *Trial Court*: Counsel—
>
> *Trial Counsel*: —for defendant.
>
> *Trial Court*: —we're way past that.
>
> *Trial Counsel*: I know we're way past that. We have to, we have to have them. We have to have—
>
> *Trial Court*: Why?
>
> *Trial Counsel*: —them early on.
>
> * * *
>
> *Trial Counsel*: The photographs are gonna be an indication [of] this man's injuries.
>
> *Trial Court*: I know that.
>
> *Trial Counsel*: Yes.
>
> *Trial Court*: So what will they tell you about this trial. She wants to introduce them now.
>
> *Trial Counsel*: Yeah. I'm saying it's too late.
>
> *Trial Court*: Overruled. You can bring the jury in.

When the prosecutor resumed with redirect examination of the victim and introduction of the photographs, trial counsel objected and requested a voir dire examination. The victim testified that he had not seen the photographs before that day, prompting trial counsel's restated objection because the victim had not seen the photographs before; however, the trial court overruled the objection and admitted the photographs. When redirect examination resumed, the victim testified that the photographs showed the burn marks on his face, sections of his hair that had been cut, blood on his head, and injuries from the stick.

Defendant elected to testify at trial, giving a different description of the incident. Before the incident, defendant stated he was at a nearby bar, when his daughter's grandmother, Karen Puente, called him, asking to borrow some money. Defendant met Puente to give her money and then went to Gilson's apartment to spend the night because he forgot his keys to his own house. About ten minutes later, defendant was sitting in the living room with about six other people when the victim, whom defendant recognized as "Robin" and a person that he had sold drugs to a couple times, arrived at the apartment with a female named Alexis. Defendant suspected the victim was "high on drugs because he was tweaking . . . like jittery [and] . . . blabbering. He couldn't stand still." Defendant observed the victim and Gilson get into an argument and then the victim "reached in his pocket and pulled out, uh, a half a brick and like kind of like threatened [Gilson] with it." Because defendant thought the victim was going to throw or hit Gilson with the brick, defendant slammed the victim to the floor, punched him twice, and attempted to grab the brick from him. Defendant stated that Campbell took the brick from the victim and defendant "held the victim's arms down for a minute and told him to go clean up." At that point, the victim "willingly went to the bathroom." Defendant heard the shower turn on, so he went to the bedroom to sleep. Defendant stated he was awoken by a police officer, telling him to come into the living room. Defendant denied approaching the victim on the street, demanding money from the victim, hitting the victim with a stick, removing the victim's clothing, cutting the victim's hair, and burning the victim's face.

During defendant's cross-examination, a portion of defendant's interrogation with police was played for the jury. In the interrogation, defendant stated that the victim owed money for a television and drugs but that he only physically restrained the victim and Campbell hit the victim with the stick. Defendant later admitted during the interrogation that he lied about being asleep at the time of the incident. At the end of the trial, the jury found defendant guilty of torture, unarmed robbery, unlawful imprisonment, AWIGBH, felonious assault, and assault and battery. Defendant was sentenced as delineated above.

After sentencing, defendant filed a timely claim of appeal from the trial court's judgment of sentence. With his appellate brief, defendant moved to remand to develop a claim of ineffective assistance of trial counsel, arguing trial counsel was ineffective for failing to obtain the photographs of the victim's injuries before the deadline for defendant to accept a plea offer and failing to call Puente as a witness. Defendant also argued he was prejudiced by the prosecution's withholding of the photographs of the victim's injuries. This Court granted defendant's motion to remand "to allow defendant to file a motion for the relief he deems appropriate and have an evidentiary hearing and decision whether defendant was denied effective assistance of counsel." *People v Canales*, unpublished order of the Court of Appeals, entered June 18, 2020 (Docket No. 350536).

-4-

On remand to the trial court, defendant argued he was (a) denied due process when the prosecutor withheld the photographs of the victim's injuries until the plea offer expired, (b) prejudiced by the prosecutor's violation of the discovery order and the trial court's failure to enforce the order, and (c) denied effective assistance of counsel for trial counsel's failure to obtain the photographs before trial and not calling Puente as a witness. Because of the COVID-19 pandemic, the trial court conducted the *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973), hearing by Zoom technology, as authorized by the Michigan Supreme Court, without objection by any of the parties. Defendant's trial counsel, John Holler, testified that on the first day of trial he received two photographs of the victim's burn marks on his face allegedly from the incident. As a result, trial counsel stated that he objected to the photographs:

> These were especially egregious to me, they were in violation, clear violation of the Court's order of discovery. They were [a] surprise to the defendant and me, and I also made it clear, I thought, on the record that I needed to have these—this photograph and another to deal with my client and consult with my client in evaluating the plea offer.

> \* \* \*

> Without question it just sabotaged my ability to properly and effectively represent [defendant] and consulting with him.

However, trial counsel testified that timely disclosure of the photographs would not have made a difference in his trial strategy. As to calling Puente as a witness, trial counsel testified:

> [S]he didn't go inside the apartment building[,] she just went on her way. So[,] she was never a witness to any of the—to whatever happened inside the apartment building that [the victim] says is an assault against his person that resulted in these burns. . . . I reached out and tried to contact her through another person and didn't get much response and then finally I told my—it appeared to me that even if you take everything that [defendant] is telling me was true then she would apply no value at all to his defense.

The trial court denied defendant's motion for a new trial, stating "there was no error on the part of [trial counsel] in his representation of [defendant]." The trial court concluded that trial counsel's performance did not fall below the objective standard of reasonableness because (1) trial counsel appropriately determined that Puente provided no value to the defense because she was not a witness to the incident; (2) trial counsel's inability to effectively negotiate a plea deal because of the late disclosure did not affect his trial strategy; and (3) trial counsel made a timely objection to the admission of the photographs. A written order memorializing the trial court's ruling was entered the same day.

Shortly thereafter, defendant again moved for remand, arguing the Michigan Department of Corrections (MDOC) sent two letters to the trial court after defendant's sentencing that indicated there were errors in the PSIR that needed to be corrected. Consequently, defendant contended that the trial court sentenced defendant, relying on the errors, under the mistaken idea that the mandatory 25-year sentence applied to all felony convictions, instead of only applying to the

AWIGBH conviction, and erroneously sentenced defendant to a term greater than the 15-year maximum for his felonious assault conviction because the letters were never mentioned. Because neither trial counsel nor appellate counsel recognized or addressed this issue, defendant also argued ineffective assistance of counsel on this basis. In response, plaintiff agreed that the PSIR incorrectly stated that the 25-year minimum sentence for a violent habitual offender, under MCL 769.12(1)(a), applied to all felony convictions and that defendant's felonious assault sentence was limited to not more than 15 years; and therefore, the trial court erred. However, plaintiff argued remand was not necessary because the sentencing issues could be corrected in this Court's ultimate opinion on appeal. This Court denied defendant's motion to remand "for failure to persuade the Court of the necessity of a remand at this time." *People v Canales*, unpublished order of the Court of Appeals, entered on March 18, 2020 (Docket No. 350536).

## II. ANALYSIS

Defendant was not denied due process or prejudiced by the prosecutor's failure to timely disclose photographs of the victim's injuries until trial or the trial court's failure to enforce the discovery order. Further, he was not denied effective assistance of counsel by trial counsel's failure to ensure that defendant had the opportunity to review all of the discovery before deciding whether to accept the plea offer and failure to call Puente as a witness at trial. As a result, the trial court did not err in its findings of fact, leading this Court to deny the motion to remand in error. However, the trial court did make a mistake in law during defendant's sentencing, although the failure to raise this error by trial counsel and appellate counsel only constituted ineffective assistance of counsel with regard to trial counsel.

## A. STANDARD OF REVIEW

A defendant's constitutional questions, including due-process rights, are reviewed de novo. *People v Borgne*, 483 Mich 178, 184; 768 NW2d 290 (2009). This Court reviews "a trial court's decision regarding the appropriate remedy for noncompliance with a discovery order for an abuse of discretion." *People v Davie*, 225 Mich App 592, 597-598; 571 NW2d 229 (1997). Likewise, this Court reviews the trial court's decisions regarding the information in a defendant's PSIR for an abuse of discretion. *People v Lampe*, 327 Mich App 104, 120; 933 NW2d 314 (2019). An abuse of discretion occurs when the trial court's decision falls outside the range of reasonable and principled outcomes. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). "Generally, 'a defendant is entitled to resentencing where a sentencing court fails to exercise its discretion because of a mistaken belief in the law.' " *People v Sexton*, 250 Mich App 211, 228; 646 NW2d 875 (2002) (citation omitted). Additionally, a trial court abuses its discretion when the sentence imposed by the trial court is disproportionate to the seriousness of the circumstances involving the offense and the offender. *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). If the trial court selects a sentence that falls within the range recommended under the advisory guidelines, that sentence is presumptively proportionate. *Id*. at 658. The reviewing court must affirm a sentence that falls within the recommended sentencing range absent an error in scoring or reliance on inaccurate information. *People v Schrauben*, 314 Mich App 181, 196 n 1; 886 NW2d 173 (2016).

In addition, the determination of whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575,

-6-

579; 640 NW2d 246 (2002). The trial court's factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo. *Id*. "A trial court's factual finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Wiley*, 324 Mich App 130, 165; 919 NW2d 802 (2018) (quotation marks and citation omitted). "[T]he test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel." *People v Uphaus*, 278 Mich App 174, 186; 748 NW2d 899 (2008). "Hence, defendant must show that his appellate counsel's decision not to raise a claim of ineffective assistance of trial counsel fell below an objective standard of reasonableness and prejudiced his appeal." *Id*. However, when "claims of ineffective assistance of counsel are unpreserved, our review is limited to errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

## B. DISCOVERY

Defendant argues he was denied due-process and prejudiced by the prosecutor's untimely disclosure of photographs depicting the extent of the victim's injuries until trial and the trial court's failure to enforce the discovery order. We disagree.

Unlike civil litigation, which primarily only limits discovery by the relevancy of the information sought and its likelihood to lead to the discovery of admissible evidence, "discovery in criminal cases is constrained by the limitations expressly set forth in the reciprocal criminal discovery rule promulgated by our Supreme Court, MCR 6.201." *People v Greenfield*, 271 Mich App 442, 447; 722 NW2d 254 (2006). In fact, "our Supreme Court has plainly stated that MCR 6.201 governs and defines the scope of criminal discovery in Michigan." *Id*. "Under due process principles, the prosecution is obligated to disclose evidence that is both favorable to the defendant and material to the determination of guilt or punishment." *People v Fink*, 456 Mich 449, 454; 574 NW2d 28 (1998). Under MCR 6.201(H), the prosecution has a continuing duty to disclose "additional information or material subject to disclosure under this rule, without further request[.]" MCR 6.201(H). If the discovery requirements of MCR 6.201 have been violated, the trial court has discretion to fashion an appropriate remedy after balancing the interests of the court, the parties, and the public. *Davie*, 225 Mich App at 598. This balancing includes the consideration of the reasons for noncompliance and the resultant actual prejudice, if any. *Id*. "It requires inquiry into all the relevant circumstances, including the causes and bona fides of tardy, or total, noncompliance, and a showing by the objecting party of actual prejudice." *Id*. (quotation marks and citation omitted).

Defendant was not denied due-process by the prosecutor's disclosure on the first day of trial of the photographs of the victim's injuries. To support his argument, defendant primarily argues that the photographs were taken within a short time after the incident and, therefore, should have been timely disclosed before trial began. Specifically, defendant contends that if the prosecutor had timely disclosed the two photographs that emphasized the victim's burn marks on his face, defendant would have accepted the plea offer before trial began. We also note that defendant's claim of prejudice is solely argued regarding his plea negotiation and does not challenge the impact of the photographs regarding his conviction. A review of the record indicates that defendant did timely receive all but two photographs depicting the victim's injuries but received the two photographs depicting the victim's burn marks on the first day of trial. While it

does appear that there was a delay in delivery to defendant of the two photographs in question, we do not conclude that such delay was intentional by the prosecutor or prejudicial to defendant.

To start, there is no record that the prosecutor deliberately waited to disclose the photographs to defendant. Instead, the late disclosure was apparently caused within the police department by the evidence technician's late delivery of the photographs to the officer-in-charge. In fact, we take defendant's decision not to present any witnesses or evidence on remand to support his argument as an indication that the prosecutor timely disclosed the photographs to defendant. As a result, defendant has not supported his argument that the prosecutor purposefully violated the discovery order to infringe on defendant's due-process rights. *Davie*, 225 Mich App at 598.

Even to the extent the discovery order was violated, defendant has not established that the trial court's decision to admit the photographs was an abuse of its discretion. In determining whether to admit the photographs at trial, the trial court heard and overruled defendant's objection that he needed to have the photographs "in a timely fashion because it goes into all of the things that develop with a, a defendant's rep—representation including the possibility of whether an appropriate plea is appropriate . . . for defendant." While the trial court's balancing of the interests is not thoroughly outlined in the record, its decision reasonably falls within its discretion. As stated, there is no record that the prosecutor deliberately failed to comply with the discovery order. As to actual prejudice to defendant, a review of the record indicates that defendant was aware of the extent of the victim's injuries before the trial began, including the burn marks. Specifically, defendant received the victim's medical records and reviewed all but two photographs showing the victim's injuries, indicating scratches, bruises, missing hair, and the body camera footage from the night of the incident. With this information, defendant rejected the plea offer and maintained the defense that the victim caused his own injuries by using a "crack lighter." In fact, trial counsel indicated the photographs would not "have made a difference in the strategy of trial[.]" Accordingly, the trial court's finding that defendant did not establish actual prejudice from the prosecutor's late disclosure is supported by the record. On this basis, we conclude that the trial court did not abuse its discretion, nor infringe on defendant's due-process rights, in admitting the photographs of the victim's injuries at trial over defendant's objection.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues he was denied effective assistance of counsel by trial counsel's failure to ensure that he had the opportunity to review all of the discovery before deciding whether to accept a plea offer and the failure to call Puente as a witness at trial. We disagree.

Effective assistance of counsel is presumed and defendant bears a heavy burden to prove otherwise. *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999). To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *People v Johnson*, 451 Mich 115, 124; 545 NW2d 637 (1996). Defendant must overcome the strong presumption that counsel's actions constituted sound trial strategy under the circumstances. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

Defendant was not denied effective assistance of counsel for trial counsel's failure to ensure that all the photographs had been disclosed by the prosecutor before trial. "The failure to reasonably investigate a case can constitute ineffective assistance of counsel, but only when such failure undermines confidence in the trial's outcome." *People v Anderson*, 322 Mich App 622, 630-631; 912 NW2d 607 (2018) (quotation marks and citation omitted). This Court "will not second-guess counsel on matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight." *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defendant contends that trial counsel's failure to ensure defendant had all of the discovery kept trial counsel from discovering the two photographs of the victim's burn marks before trial; and if trial counsel had ensured defendant had all of the discovery, defendant would have accepted the plea offer before it expired. However, the record does not indicate whether trial counsel had any reason to believe that defendant did not already have all of the discovery at the time of trial. Rather, trial counsel indicated that he and defendant reviewed the victim's medical records and the photographs of the victim's injuries that had been disclosed before trial. Additionally, there is no record that the prosecution was aware of the two photographs depicting the victim's burn marks until the first day of trial. Consequently, there is no evidence that trial counsel should have been aware of the existence of the photographs depicting the victim's burn marks or failed to obtain any other discovery that existed before trial. Further, while we note trial counsel's delay in objecting to the photographs by not moving to exclude the photographs on receipt of the prosecutor's disclosure after the first day of trial, trial counsel did swiftly object to the admission of the photographs on the second day of trial.

Even to the extent that trial counsel failed to ensure defendant had all of the discovery before trial, defendant has not established that the outcome would have been different had the photographs of the victim's burn marks been discovered before the plea expired. Defendant contends that he would have accepted the plea offer if he had reviewed the photographs with the rest of discovery. However, because defendant had access to the victim's medical records, photographs of the victim's other injuries, and the victim's statement regarding the incident, we are not persuaded that the two photographs of the victim's burn marks would have unequivocally convinced defendant to accept the plea offer. Likewise, because of the cumulative nature of the photographs with the victim's testimony and other photographs of the victim's injuries, it is unlikely that the photographs of the victim's burn marks were determinative of the jury's verdict. Instead, defendant's challenge to trial counsel's performance appears to arise from his buyer's remorse in rejecting the plea offer before trial rather than any actual error by trial counsel. As a result, we opine defendant was not denied the effective assistance of counsel for failing to ensure that the prosecutor had disclosed all of the discovery before trial.

In addition, defendant was not denied effective assistance of counsel for trial counsel's failure to call Puente as a witness. The decision whether to call or question witnesses is presumed to be a matter of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Further:

> [A] claim of ineffective assistance of counsel premised on the failure to call witnesses is analyzed under the same standard as all other claims of ineffective assistance of counsel, i.e., a defendant must show that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would

have been different." [*People v Jurewicz*, ___ Mich ___; 948 NW2d 448 (2020), quoting *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), and citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

To support his argument, defendant argues Puente should have been called as a witness at trial to corroborate some of defendant's testimony regarding the incident. A review of the record establishes that trial counsel was aware of Puente; however, he did not pursue her as a witness because "she was never a witness to . . . whatever happened inside the apartment building[.]" On this basis, excluding Puente as a witness was not an objectively unreasonable decision because Puente's testimony would not have assisted defendant's defense or corroborated defendant's claim that the victim caused his own injuries. *People v Davis*, 250 Mich App 357, 369; 649 NW2d 94 (2002).

To the extent that trial counsel failed to call Puente as an allegedly favorable witness for the defense, defendant has not established that the outcome of his trial would have been different had Puente testified. Defendant suggests that Puente would have corroborated his version of the events, including the time of his arrival at the apartment building before the victim arrived. However, defendant's argument is speculative because Puente was not responsive to trial counsel's attempts to contact her. Additionally, even Puente's alleged testimony that she walked with defendant to the apartment building and watched him go inside, would not have conclusively established that defendant did not commit the acts alleged by the victim. On this basis, because Puente's testimony would not have corroborated the events that occurred at the time of the incident, the decision to not call Puente as a witness was a matter of trial strategy. Regardless, defendant has not provided an affidavit of what Puente's proposed testimony would have been at trial, making defendant's corroboration argument purely speculative. *People v Avant*, 235 Mich App 499, 508; 597 NW2d 864 (1999). Accordingly, defendant was not deprived of effective assistance of counsel because Puente's testimony would not have supported defendant's denial that the incident, as the victim testified, occurred. Instead, it is evident that trial counsel's strategy was to focus on the victim's drug use and credibility as a witness, which was reasonably persuasive given the prosecutor's initial plea offer of a minimum sentence of 12 years' imprisonment for the torture charge and dismissal of the remaining counts. As a result, we opine defendant was not denied the effective assistance of counsel for failing to call Puente as a witness.

## D. REMAND

Defendant further argues the trial court erred in its findings of fact, which led this Court to deny the motion to remand in error. To support his argument, defendant contends the trial court only addressed whether trial counsel provided effective assistance at trial without discussing the prejudice that resulted from the prosecutor's alleged violation of the discovery order. However, we note this Court's order to remand was for the stated purpose to conduct "an evidentiary hearing and decision whether defendant was denied the effective assistance of counsel." *Canales*, unpub order at 1. "When a case is remanded by an appellate court, proceedings on remand are limited to the scope of the remand order." *People v Canter*, 197 Mich App 550, 567; 496 NW2d 336 (1992). As stated, "[a] trial court's factual finding is clearly erroneous if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *Wiley*, 324 Mich App at 165.

-10-

At the *Ginther* hearing, defendant argued, in addition to ineffective assistance of counsel, that he was denied due process when the prosecutor withheld the photographs of the victim's injuries until the plea offer expired, and was prejudiced by the prosecutor's violation of the discovery order and the trial court's failure to enforce the order. The trial court concluded that "based on the testimony and evidence there was no violation of [defendant's] due process right on this record." Moreover, defendant reviewed all of the discovery and was given time to consider whether to accept the plea offer before it expired. Notably, after the prosecutor disclosed the two additional photographs at trial, defendant did not express any desire to reconsider his decision to reject the plea offer to the trial court or prosecutor. Rather, the only noticeable effect the photographs appeared to have on defendant was a request for an amended plea offer of 4 to 20 years' imprisonment, which was a significant reduction from the original 12 years' imprisonment sentence. On this basis, we conclude that the trial court addressed the prosecutor's disclosure of the photographs on remand, even if briefly, finding that the disclosure did not affect defendant's due-process rights. As stated, defendant has not supported his argument that the prosecutor purposefully violated the discovery order, infringing on defendant's due-process rights, nor did the trial court abuse its discretion or infringe on defendant's due-process rights by admitting the photographs of the victim's injuries at trial over defendant's objection. Further, we note that the two photographs disclosed at trial were, at best, cumulative of the victim's medical records and the previously disclosed photographs, indicating that defendant had all the relevant information available to him when he decided to reject the plea offer. Therefore, the trial court did not err in its findings of fact, which led this Court to deny the motion to remand.

## E. PSIR

Defendant argues the trial court erred in sentencing defendant, relying on the PSIR that inaccurately stated that the violent offender provision of the fourth-offense habitual offender statute had a 25-year mandatory minimum for all felony counts. We agree to the extent that remand is appropriate for the task of resentencing defendant under the correct and applicable statutes and amendment of the PSIR. Defendant also asserts trial counsel and appellate counsel were ineffective for failing to ascertain the trial court's mistake of law at sentencing and to seek correction of this error. While trial counsel was ineffective at sentencing, appellate counsel noted the error and has sought correction.

The PSIR "is an information-gathering tool for use by the sentencing court." *Lampe*, 327 Mich App at 120 (quotation marks and citation omitted). In addition to the trial court's use of the PSIR at sentencing, the PSIR also follows a defendant to prison and can have ramifications related to security classification and parole. *Id*. The information in the PSIR "is presumed to be accurate, and the defendant has the burden of going forward with an effective challenge, but upon assertion of a challenge to the factual accuracy of information, a court has a duty to resolve the challenge." *Id*. (quotation marks and citation omitted). "If the court finds that challenged information is inaccurate or irrelevant, that finding must be made part of the record and the information must be corrected or stricken from the report." *Id*. (quotation marks and citation omitted).

The trial court erred in sentencing defendant, relying on the PSIR that inaccurately stated that the violent offender provision of the fourth-offense habitual offender statute had a 25-year mandatory minimum for all felony counts. A review of the record indicates that defendant was sentenced using a PSIR that deemed him to be a violent habitual offender, under MCL

769.12(1)(a). The statute requires that defendant be convicted of a "serious crime" to receive the mandatory minimum sentence of 25 years:

> If the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years. Not more than 1 conviction arising out of the same transaction shall be considered a prior felony conviction for the purposes of this subsection only. [MCL 769.12(1)(a).]

A serious crime is defined by the statue as "an offense against a person in violation of section 83, 84, 86, 88, 89, 317, 321, 349, 349a, 350, 397, 520b, 520c, 520d, 520g(1), 529, or 529a of the Michigan penal code[.]" MCL 769.12(6)(c). On this basis, the only crime that defendant was convicted of that qualified as a serious crime was his AWIGBH conviction, i.e., MCL 750.84. However, the PSIR broadly indicates that all of defendant's convictions, except for assault and battery, were subject to the 25-year mandatory minimum sentence. Because this amounts to an incorrect statement of law, the PSIR requires correction to this effect and resentencing is required.

Similarly, the trial court erred in sentencing defendant to 25 to 37-½ years' imprisonment for his felonious assault conviction. Under MCL 769.12(1)(c):

> If the subsequent felony is punishable upon a first conviction by imprisonment for a maximum term that is less than 5 years, the court, except as otherwise provided in this section or section 1 of chapter XI, may sentence the person to imprisonment for a maximum term of not more than 15 years. [MCL 769.12(1)(c).]

The felonious assault statute states that "a person who assaults another person with . . . [a] dangerous weapon . . .is guilty of a felony punishable by imprisonment for not more than 4 years[.]" MCL 750.82(1). On this basis, defendant's maximum sentence for felonious assault could not be greater than 15 years' imprisonment. However, the PSIR indicates that defendant was subject to a maximum sentence for this charge of 25 years. Because this also amounts to an incorrect statement of law, the PSIR requires correction to this effect and resentencing is necessitated.

We note that the prosecution agreed with defendant's argument that the PSIR required correction as stated above. Because the violent habitual offender statute was included in the PSIR as applying to all of defendant's felony convictions and defendant's maximum sentence for his felonious assault conviction exceeds the statutory maximum sentence, the PSIR is not accurate. Although the MDOC sent two letters to the trial court in an attempt to correct these errors, a review of the record does not indicate whether the trial court was aware of the errors in the PSIR or the letters. In fact, we suspect the trial court only first became aware of the errors when briefly addressed at the *Ginther* hearing:

> *Appellate Counsel*: I did have one other area that I forgot to address on direct. I don't know if the Court minds me doing this. Subsequent to the representation, have you received copies of letters from the [Department] of Correction[s] regarding Mr. Canales sentence?

*Trial Counsel*: Yeah, I have. There's a—there was—they sent a letter to the Judge saying the judgment of sentence needed to be corrected. It doesn't affect his overall length of sentence, but there's some errors on it that need to be corrected and I thought that Judge Callahan or someone was going to do that sua sponte but it doesn't appear like it. And I followed up with the Department of Corrections. I never filed a motion to correct the judgment, but yes I did. And it looks like it's never been done.

On this basis, remand is appropriate for the task of correcting the PSIR to omit the violent offender provision of the fourth-offense habitual offender statute for all of defendant's felony convictions, except AWIGBH, and to correct the maximum sentence for defendant's felonious assault conviction.

Further, resentencing is also appropriate to determine whether the trial court's sentence was grounded on an accurate recitation of the statutes. As stated, it is unclear whether the trial court was under the impression that the 25-year minimum sentence, under MCL 769.12(1)(a), applied to all the felony convictions or only AWIGBH. At sentencing, trial counsel requested a minimum sentence of 25 years, stating "I think that the 25 years minimum itself I think is more appropriate for a case like this." The trial court proceeded to sentence defendant to "the minimum of 25 years" for felonious assault, AWIGBH, unlawful imprisonment, and unarmed robbery. On this basis, it would appear that the trial court sentenced defendant to a 25-year minimum sentence for these felony convictions in conjunction with the violent offender provision of the fourth-offense habitual offender statute, which, as stated above, constitutes a misapplication of the law. Therefore, remand is also appropriate for the task of resentencing defendant under the correct and applicable statutes highlighted above.

In addition, defendant argues he was denied effective assistance of counsel for the failure of trial counsel and appellate counsel to identify or raise the errors in the PSIR. We agree to the extent that trial counsel was ineffective but disagree in regard to appellate counsel.

To start, we note that a claim of ineffective assistance of counsel must be raised below in a motion for a new trial or an evidentiary hearing under *Ginther*. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). However, because defendant argued for the first time on appeal that he was denied effective assistance of counsel for trial counsel's and appellate counsel's failure to discover the error in the PSIR, this issue is unpreserved for appellate review, limiting our review to "errors apparent on the record." *Unger*, 278 Mich App at 253.

"The Court uses the same legal standard for ineffective assistance of counsel when scrutinizing the performance of trial counsel and appellate counsel." *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). As stated, effective assistance of counsel is presumed and defendant bears a heavy burden to prove otherwise. *Rockey*, 237 Mich App at 76. To establish ineffective assistance of counsel, defendant must show that counsel's performance fell below an objective standard of reasonableness, and that the representation so prejudiced defendant that he was denied the right to a fair trial. *Pickens*, 446 Mich at 338. To establish prejudice, defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. *Johnson*, 451 Mich at 124. Defendant must overcome the strong presumption

that counsel's actions constituted sound trial strategy under the circumstances. *Toma*, 462 Mich at 302.

Defendant was denied effective assistance of counsel for trial counsel's failure to recognize and address the errors in the PSIR at sentencing. We agree with defendant that trial counsel should have discovered the errors in the PSIR. At sentencing, trial counsel explicitly stated that he had reviewed the PSIR, and indicated that the violent offender habitual provision of the fourth-offense habitual offender statute was applied correctly. As a result of trial counsel's failure, defendant was prejudiced because he was sentenced using an inaccurate PSIR, which the trial court appeared to rely on, involving a mistake of law. Therefore, defendant was denied effective assistance by trial counsel's failure to recognize and address the errors in the PSIR.

Conversely, defendant was not denied effective assistance of counsel for appellate counsel's failure to raise the errors in the PSIR. A review of the record indicates that appellate counsel did identify the errors in the PSIR and, at a minimum, attempted to raise the issue at the *Ginther* hearing when questioning trial counsel as highlighted above. Because appellate counsel recognized the errors in the PSIR and is actively seeking remand and resentencing to correct the errors in defendant's sentencing, we opine that appellate counsel has provided effective assistance of counsel at this time.

## III. CONCLUSION

Remanded to the extent necessary to correct the PSIR and to resentence defendant under the correct and applicable statutes. We do not retain jurisdiction.

/s/ Jonathan Tukel
/s/ David H. Sawyer
/s/ Thomas C. Cameron

-14-